IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| JOSE MALDONADO,<br><br>    Plaintiff<br><br>vs.<br><br>JOSHUA A. FILUTZE,<br><br>    Defendant | CASE NO. 1:23-CV-00068-SPB<br><br>SUSAN PARADISE BAXTER<br>UNITED STATES DISTRICT JUDGE<br><br>RICHARD A. LANZILLO<br>UNITED STATES MAGISTRATE JUDGE<br><br>REPORT AND RECOMMENDATION ON<br>DEFENDANT'S MOTION TO DISMISS<br><br>IN RE: ECF NO. 5 |

**I.   RECOMMENDATION**

It is respectfully recommended that Defendant's motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P 12(b)(6) [ECF No. 5], which the undersigned has converted to a motion for summary judgment under Fed. R. Civ. P. 56, be GRANTED.

**II.   REPORT**

**A.   Procedural History**

Jose Maldonado commenced this action in the Court of Common Pleas of Erie County, Pennsylvania, against Joshua A. Filutze, a police officer employed by the City of Erie. Maldonado's Amended Complaint is the operative pleading before the Court and asserts a single count against Filutze for false arrest and false imprisonment pursuant to 42 U.S.C. § 1983. *See* ECF No. 2-1. Filutze removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 based upon subject matter jurisdiction conferred by 28 U.S.C. § 1331. *See* ECF No. 1. He then moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the record supported probable cause for Maldonado's arrest as a matter of law and,

1

alternatively, that qualified immunity shielded him from suit. *See* ECF No. 5, 6. Filutze's motion attached an audio-video recording of a March 6, 2022, interview of Wanda Lamberty, Maldonado's ex-wife and the complainant in the underlying criminal prosecution of Maldonado (ECF No. 5-2), an affidavit executed by Filutze attesting to certain background facts and the authenticity of the audio-video recording (ECF No. 5-1), and an Affidavit of Probable Cause in support a Police Criminal Complaint that Filutze filed against Maldonado on March 6, 2022.

Maldonado filed a response and brief in opposition to the motion to dismiss in which he argued, among other things, that the standard of review applicable to Filutze's Rule 12(b)(6) motion precluded the Court from considering Filutze's exhibits. Filutze then filed a reply brief that attached a Petition for Writ of Habeas Corpus filed by Maldonado in his state court criminal case and an Order of the Court of Common Pleas of Erie County granting that Petition as additional exhibits in support of his motion. *See* ECF Nos. 13, 13-1, 13-2. Maldonado then filed a Sur-Reply in opposition to the motion.

Following argument on the motion, the undersigned notified the parties that Filutze's motion to dismiss would be converted to a motion for summary judgment and the parties would be permitted a period of limited discovery and the opportunity to file supplemental record materials and briefs. *See* ECF Nos. 17 (Minute Entry), 18 (Order). After the parties completed the limited discovery authorized by the Court, Filutze filed a supplement to his motion that attached video recordings captured from a "Ring doorbell" at Lamberty's residence on March 6, 2022, and the Affidavit of Inspector Christopher M. Janus explaining the process by which this evidence was collected and recovered. *See* ECF Nos. 19, 10-1, 19-2, 20. Maldonado then filed a brief in opposition to the motion for summary judgment (ECF No. 25), and a copy of the

2

"Case Report Detail" regarding the Criminal Complaint against Maldonado (ECF No. 26). Upon the filing of these materials, the motion became ripe for decision.

### B. Material Facts

Maldonado is a resident of the City of Erie, and Filutze is a City of Erie police officer. On March 6, 2022, Filutze and another officer traveled to Lamberty's residence at 535 East 7th Street in Erie in response to her report of that Maldonado had trespassed upon her property and stolen items of personal property. Upon arrival, the officers engaged their body cameras, which recorded their interaction with Lamberty and others present at the residence.[1] *See* ECF No. 7. Lamberty met the officers on the front porch of the residence and advised them that Maldonado was her "ex" and had been in and out of jail and battling addiction. She specifically told the officers that Maldonado was "not on the lease" for the East 7th Street residence and was not permitted in the residence. Lamberty further stated that "probation" had ordered his exclusion from the residence. According to Lamberty, she, her son, and other family members went out during the evening of March 5 and did not return until approximately 2:30 a.m. on March 6. She explained that Maldonado called her shortly after she returned to the residence but that she informed him that she did not wish to speak with him, and she then ended the call. When she awoke around 10:00 a.m. that morning, she discovered that Maldonado had entered the premises during the night and "gone through her stuff." She noticed that various items of personal property were missing from the residence and, upon reviewing the video recording from her Ring doorbell camera, she observed that Maldonado had existed the residence with bags of property. She informed the officers that the missing property included a shoe cleaner

---

[1] In addition to Lamberty, the body-cam recording shows the intermittent presence of an older woman believed to be Maldonado's mother, a male child believed to be Lamberty's son, and a dog. Near the end of the recording, the voice of another male is heard. The surrounding comments indicate that this individual is Lamberty's adult son.

kit that her son had purchased for approximately $40, a box of .380 Fiocchi 90 grain bullets that she valued between $120 and $130, and a quantity of her prescription medical marijuana that she valued at approximately $80. Filutze asked Lamberty whether her doorbell camera recorded Maldonado entering the residence without property and later leaving with items. Lamberty stated that it did, and she then replayed the recordings for the officers on her smart phone. Filutze told Lamberty to preserve this evidence and instructed her how to download the video to a City of Erie Police evidence website or application. The Ring doorbell video recording confirmed that Maldonado entered the front door of the residence without any property at approximately 7:02 a.m. and later left through the same door with two bags containing items that cannot be identified from the video. *See* ECF No. 20. During the interview of Lamberty, another woman entered upon the porch of the residence. Her comments indicated that she was Maldonado's mother. When asked whether she knew where Maldonado was staying, she responded he stays "all over." She later stated that he uses her address for mailing purposes. She did not indicate that Maldonado resided or had the right to reside at the 535 East 7th Street premises. Lamberty stated that she wished to press charges against Maldonado. Filutze then summarized the information and evidence Lamberty had provided and advised her that it supported the filing of criminal trespass and burglary charges against Maldonado.

On March 6, 2022, Filutze filed a Criminal Complaint and Affidavit of Probable Cause charging Maldonado with burglary (18 Pa.C.S. §3502(a)(1)(2)), theft of personal property (18 Pa.C.S. §3921(a)), and criminal trespass (18 Pa.C.S. §3503(a)(1)(i)). ECF No. 2-1, ¶ 15. Filutze's Affidavit of Probable Cause attested as follows:

4

> On 03/06/2022 @ 0700 hrs. the defendant Jose Maldonado did enter an occupied structure, 535 East 7th St. that is adapted for overnight accommodations in which at the time people were present with nothing in his hands. The defendant was advised in previous encounters from the victim that the defendant was not allowed in the residence. The defendant unlawfully took movable properly from the residence. These items include Crep Protect Shoe Cleaner,1 box of .380 Fiocchi 90 grain bullets, and prescription marijuana belonging to the victim. The defendant did leave the residence carrying plastic bags in his hands. The defendant was seen entering and exiting the residence via security cameras on the front door of the residence.

ECF No. 5-3.

Based on the Affidavit of Probable Cause, a Pennsylvania Magisterial District Judge issued a warrant for Maldonado's arrest on the charges, and Maldonado was arrested on March 23, 2022. ECF No. 2-1, ¶ 16. Thereafter, Maldonado was held in the Erie County Prison following his inability to post $5,000 cash bail. *Id.*, ¶ 18. On April 11, 2022, a preliminary hearing on the charges was conducted before a Pennsylvania Magisterial District Judge. *Id.* at ¶ 20. The only witness called by the Commonwealth to testify was Lamberty. *Id.* The Magisterial District Judge found that the Commonwealth's evidence supported probable cause as to each of the three charges against Maldonado and bound those charges over for trial. *Id.*

On July 8, 2022, Maldonado's criminal defense attorney filed a Petition for Writ of Habeas Corpus in the Court of Common Pleas challenging the sufficiency of the evidence to support the charges. *See* ECF No. 13-1. The Honorable John J. Mead scheduled a hearing on the Petition for August 31, but prior to the hearing, the Commonwealth requested that the hearing be cancelled because Lamberty had left Pennsylvania and it had elected to rely solely on the preliminary hearing transcript in opposition to the Petition. *See* ECF No. 13-2, p.1. Based on the preliminary hearing transcript, Judge Mead found the evidence insufficient to support the

charges and granted the Petition. *Id.*, pp. 1-2. Thereafter, Maldonado was released from custody. ECF No. 2-1, ¶ 22.

### C. Standard of Review

Federal Rule of Civil Procedure 56(a) requires the district court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to

interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Where, like here, the record includes video and audio recordings related to the claims, the Court must not draw inferences that are inconsistent with the video evidence. *Smith v. McKinney*, 2023 WL 6543531, at *3 (E.D. Pa. Oct. 6, 2023) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)). Instead, the court must review recordings and "view [] the facts in the light depicted by the videotape." *Wenhold v. C.O. Markel*, 2023 WL 7336452, at *3 (M.D. Pa. Nov. 7, 2023) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")).

### D. Discussion

1. **Filutze is entitled to judgment as a matter of law on Maldonado's false arrest and false imprisonment claims because the record demonstrates that Filutze had probable cause to file the charges against him.**

To sustain a claim for false arrest, a plaintiff must demonstrate "'(1) that there was an arrest; and (2) that the arrest was made without probable cause.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)); *Pinkney v. Meadville, Pennsylvania*, 648 F. Supp. 3d 615, 633 (W.D. Pa. 2023). "[W]here the police lack probable cause to make an arrest, the arrestee [also] has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 809, 820 (3d Cir. 1994). Filutze argues that he is entitled to judgment as a matter of law because the record establishes that he had probable cause to file the charges

7

against Maldonado. Alternatively (and relatedly), Filutze asserts that qualified immunity shields him from Maldonado's claims.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Dempsey*, 834 F.3d at 467 (citation omitted). "Mere suspicion is not enough for probable cause, but an officer is not required to have evidence to prove guilt beyond a reasonable doubt." *Smith v. Angelo*, 765 Fed. Appx. 757, 758 (3d Cir. 2018) (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149, (1972). "Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

Probable cause is assessed based upon the "totality-of-the-circumstances" available to the arresting officer. *Harvard*, 973 F.3d at 200 (citing *Dempsey*, 834 F.3d at 467-68). As part of this assessment, the Court "must determine whether the plainly exculpatory evidence available to the arresting officer 'outweighs the probable cause otherwise established' through inculpatory evidence." *Harvard*, 973 F.3d at 200 (citing *Dempsey*, 834 F.3d at 478, 490). "On the other hand, '[o]nce a police officer has discovered sufficient facts to establish probable cause, the officer has no constitutional duty to further investigate in hopes of finding exculpatory evidence.'" *Porter v. Gray*, 2007 WL 464694, at *12 (W.D. Pa. Feb. 13, 2007) (quoting *Patterson v. Sch. Dist. of Philadelphia*, 2000 WL 1020332, at *6 (E.D. Pa. July 19, 2000)). Because the inquiry is "necessarily fact-intensive," whether probable cause existed is

normally a question for the jury. *Harvard*, 973 F.3d at 200 (citing *Dempsey*, 834 F.3d at 468; *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 788 (3rd Cir. 2000)) ("Generally, the question of probable cause in a section 1983 damage suit is one for the jury.") (internal quotation marks and citation omitted). But a court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to [the p]laintiff, reasonably would not support a contrary factual finding." *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997). Where an officer charged the plaintiff with multiple offenses, a false arrest claim against the officer fails as a matter of law if any of the charges was supported by probable cause. *See Graham v. Connor*, 490 U.S. 386, 393, n. 6 (1989).

"To determine whether there was probable cause to arrest, courts examine the elements of the crime at issue and assess whether any particular set of facts and circumstances known to the officers at the time of arrest were sufficient for a prudent person to believe that the suspect committed the offense." *Lopez v. CSX Transp., Inc.*, 2007 WL 2212858, at *3 (D.N.J. July 31, 2007) (citing *Wright*, 409 F.3d at 602). Under Pennsylvania law, "[a] person commits the offense of burglary if, with the intent to commit a crime therein, the person... enters a building or occupied structure... in which at the time of the offense any person is present" or "in which at the time of the offense no person is present..." 18 Pa.C.S. §3502(a)(1)(2). "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921. A person commits the offense of criminal trespass "if, knowing that he is not licensed or privileged to do so, he...enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure ...." 18 Pa.C.S. §3503(a).

The totality of circumstances known to Filutze when he submitted his Affidavit of Probable Cause supported each element of each of the foregoing offenses. Lamberty reported to Filutze that Maldonado had entered her residence without permission or authority to do so with the apparent intent to commit the crime of theft. The direct and circumstantial evidence provided by Lamberty also supported that Maldonado did, in fact, commit theft. Lamperty reported that various items of personal property disappeared from her residence during the time Maldonado was present and the video evidence showed Maldonado entering the residence empty-handed and later departing with bags containing unknown items. Finally, Lamberty reported that Maldonado was not on the lease and had been excluded from the residence, and the video evidence clearly showed him entering and remaining in the residence. Filutze had no constitutional duty to personally review the lease for the premises or contact Maldonado's probation officer to verify aspects of Lamberty's information.[2] *See Porter*, 2007 WL 464694, at *12 (observing that "[o]nce a police officer has discovered sufficient facts to establish probable cause, the officer has no constitutional duty to further investigate in hopes of finding exculpatory evidence") (citation omitted). Maldonado argues that Filutze should have doubted the veracity of Lamberty's information because probation officials require individuals on probation such as Maldonado to have a stable residence. ECF No. 25, p. 2. But it does not follow that 535 East 7th Street was, in fact, Maldonado's residence. Maldonado describes Lamberty as a "vindictive ex-wife" who made her report to Filutze in an effort to have him arrested as punishment "for his perceived failings as a husband." ECF No. 15, ¶ 1. Accurate or

---

[2] Maldonado's critique of the adequacy of Filutze's investigation "inject[s] a due process argument into what is primarily a fourth amendment claim, arguing that the officers were negligent in their investigation." *Wilson v. Russo*, 212 F.3d 781, 789 n.5 (3d Cir. 2000). "However, negligence by public officials is not actionable as a due process deprivation of a civil right." *Id.* (citing *Orsatti*, 71 F.3d at 484) ("[T]he issue is not whether the information on which police officers base their request for an arrest warrant resulted from a professionally executed investigation; rather, the issue is whether that information would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.") (additional citations omitted).

not, Maldonado's assessment of Lamberty's motive does not negate the existence of probable cause based on her statements and the corroborating video evidence she submitted to Filutze. Nothing in the record supports an inference that Filutze knew or should have known that any of the information provided by Lamberty was inaccurate. Filutze fairly conveyed this information to a Magisterial District Judge of the Pennsylvania minor judiciary who likewise found it sufficient to support the charges against Maldonado. *See* ECF No. 2-1, ¶ 16. Maldonado argues that Filutze should have included additional information in his Affidavit of Probable Cause, such as the fact that Lamberty had interacted with Maldonado at the residence earlier that day. But "in applying for a warrant, police officers are not required to recount every detail of an investigation, no matter how small." *Porter*, 2007 WL 464694, at *12 (citing *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) ("All storytelling involves an element of selectivity. We cannot demand that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip."). *See also Steele v. City of Erie*, 113 Fed. Appx. 456, 459, 2004 WL 2360160 at * *3 (3d Cir. Oct 20., 2004) ("Nothing in our jurisprudence requires a police officer seeking an arrest warrant to present every scintilla of information acquired during an investigation to satisfy the standard for a finding of probable cause, as long as his submission is made in objectively good faith.").

An arrest warrant issued by a judicial officer "does not, in itself, shelter an officer from liability for false arrest." *Wilson*, 212 F.3d at 786 (citing *Sherwood*, 113 F.3d at 399). "Rather, a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are

material, or necessary, to the finding of probable cause.' " *Wilson*, 212 F.3d at 786-87. Thus, when an arrest is based on a valid warrant, courts conduct a two-pronged analysis to determine whether probable cause existed. *See Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017). They ask, "first, whether the officers, with at least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for the warrant, and second, whether those assertions or omissions were material, or necessary, to the finding of probable cause." *Id.* (citing *Wilson*, 212 F.3d at 786–87 (internal quotation marks and alteration omitted)).

In this case, nothing in the Amended Complaint or the summary judgment record supports an inference the Filutze, with reckless disregard for the truth, made any false statements or omitted to state any facts that were material or necessary to the Magisterial District Judge's finding of probable cause. This conclusion is not undermined by Judge Mead's later finding on Maldonado's habeas corpus petition that the evidence did not support the charges against him. By the time Judge Mead addressed the charges, he had the benefit of a record developed during the preliminary hearing. And the fact remains that another judicial officer had twice previously found the record sufficient to support the charges against Maldonado. Although certain of the information that Lamberty provided to Filutze may have been false, this does not negate Filutze's reasonable reliance upon that information or the existence of probable cause supported by that information.

Accordingly, no genuine issue of material fact remains for trial as to the existence of probable cause for the charges against Maldonado. Because probable cause existed for those charges, Filutze is entitled to judgment as a matter of law on Maldonado's false arrest and false imprisonment claims.

### 2. Filutze is also entitled to judgment as a matter of law based on qualified immunity.

Filutze's reasonable reliance on a neutral judicial officer's issuance of an arrest warrant also entitles him to the protections of qualified immunity. *See Orsatti*, 71 F.3d at 483 (holding that a police officer is entitled to qualified immunity where grounds for probable cause stated in warrant application were objectively reasonable). "[T]he standard for determining the reasonableness of an official's belief in the existence of probable cause is whether a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he therefore should not have applied for the warrant under the conditions." *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 345 (1986). "Because the qualified immunity doctrine provides the official with immunity from suit, not simply trial," the Court is obliged to address the defense "at the earliest possible stage of the litigation." *Orsatti*, 71 F.3d at 483 (citations omitted). Here, the record plainly supports Filutze's reliance on both the information and evidence provided by Lamberty and the Magisterial District Judge's issuance of the warrant for Maldonado's arrest. Therefore, Filutze is also entitled to judgment in his favor based on qualified immunity.

### E. Conclusion

For the reasons explained above, it is respectfully recommended that the Court **GRANT** Defendant's motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P 12(b)(6) [ECF No. 5], which the undersigned has converted to a motion for summary judgment under Fed. R. Civ. P. 56.

## III.  NOTICE

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  *See* Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive appellate rights.  *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

DATED this 14th day of November 2023.

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE